I apologize for the delay, Your Honor. I'm fighting a cold, so I apologize in advance for any coughing and sneezing. As long as you keep your voice up, we'll be okay. Thank you, Mr. Court. My name is Brian Rotemacher. I'm an attorney with the Federal Public Defender's Office in Tucson, Arizona. We represent the appellant Ricardo Torres-Acosta. I'm going to try to reserve a minute or two of my time for rebuttal. I'd like to start with a discussion of what I think may be the most important issue in the case. And that concerns the prosecutor's refusal to allow the district court to award Torres-Acosta a third point under Guidelines Section 3E1.1b, despite the fact that Torres-Acosta had accepted full responsibility and that he qualified for that third point reduction. The government's right to refuse comes from the Protect Act's amendment to that section, Section 3E1.1b. At that time, Congress took from the judiciary its power to fully determine the third point reduction and shifted power to the prosecutor to determine fact issues and essentially control whether the district court may award that third point. There are actually two sub-issues involved in this. One concerns the district court's authority under U.S. v. Wade, and the other concerns the separation of powers doctrine. In U.S. v. Wade, the Supreme Court held that it is improper for a prosecutor to refuse to take some action within her power based on an unconstitutional motive or in bad faith or for an arbitrary reason, which the Court there defined as one that's unrelated to a legitimate government end. The Court also held that a district court has the remedy, has the power to remedy such an improper refusal. In this case, the prosecutor's refusal to move for the third point was improper under Wade because the record unequivocally establishes the following three things. That Torres-Acosta fully accepted responsibility under the first part of the test, as the district court found. Second, that Torres-Acosta met the requirements for receiving the third point by pleading early enough so that the government avoided trial preparation. And third, the government refused to make that motion to allow the district court to give him that third point. What was the reason, though? Didn't the government say that because Mr. Torres-Acosta was prepared to induce his mother to commit perjury and interpose a defense that was not consistent with the record evidence, it had to go to the burden of disproving the defense and, therefore, any advantage of him pleading guilty was dissipated? I don't think the government goes that far. It did say that he was prepared to present the testimony of his mother in support of a derivative citizenship defense. So it's not your recollection of the record that the government said it had to do some additional investigation in order to disprove that defense? It did say that it had its agent review the mother's immigration file and found some affidavits. But that's just a short review that occurred in the beginning of the case. And it occurred in response to a defense initiative to dispose of the case, to resolve the case without trial. Even though the government says it was prepared, Mr. Acosta. This is their untested allegation. Mr. Acosta and the government were engaged in pretrial, non-trial disposition negotiations throughout this. The best evidence of whether the prosecutor had to prepare is at ER 17. And at that place, there's a letter that the prosecution wrote shortly to the defense counsel shortly before the plea occurred. She starts out telling the defense, quote, we need to resolve this case. And then she talks about her position on some of these matters that the Court has just asked about. But then she concludes and she says, I have yet to request the case agent gather the necessary trial exhibits and witnesses, as this task can be time-consuming. She concludes finally with, please let me know whether a trial is in the offing so that process, meaning the trial process, may begin, end quote. This is clear evidence that they have not yet begun to prepare. This Court, I would cite to the case of U.S. v. Kimple. Unfortunately, I wasn't able to cite that. I just reviewed it yesterday. But in Kimple, the trial court talks about. What was that decided, counsel? That was decided in 1994. And it was decided in the context of whether somebody did qualify for the third point for acceptance of responsibility. At that time, it was the Court's decision, not the prosecutor's decision. Did you submit that case? I didn't submit it. I just read it last night. And I have the authority and the citation I can provide to the Court. Help us now. You know, I have a question here. Under the current state of the law, Booker and Ameline, we have two questions. Was the sentence unreasonable? And do we have to remand in light of Ameline? And to me, in this case, the district court judge chose not to depart more than three levels, did consider some of the recommendations that were made. So, number one, why aren't we talking about the reasonableness of the sentence? Number two, why aren't we talking about whether or not we need to remand under Ameline? Well, in my opinion, Your Honor, under Ameline, the Court will give a limited remand. This is a situation that the Court has done many times before, specifically in the case of Booker and Ameline. Well, we're permitted to decide whether or not the sentence would have been the same. And if the district court judge has given strong indications as to why he imposed his sentence, we're not required to remand under Ameline. My reading of the decision, Your Honor, is that what the Court looks for is there is something in the record which said that the district court would not have imposed any lesser sentence had it known that the guidelines were advisory. And I think there are many indications throughout this record that the Court would have imposed a lesser sentence. It gave the bottom of the guideline range. It gave a departure. It granted other reductions. So I think every time that it had discretion, it exercised it in its favor. I think the record is not clear enough for the Court to say that this district court would not do better under the Booker decision. And I believe that this Court's case law, since Ameline, essentially is going to result in a limited remand, at least, to the district court for it to decide whether it would impose a materially different sentence. But this Court also has other case law, which I've cited in the Rule 28J letter, which talks about how the Court's going to resolve challenges to the guidelines first. Because in Ameline, the Court said essentially that the starting point for a reasonableness analysis under Booker is what's the guideline calculation. And in order for this Court to know what's reasonable, we have to go through the guidelines calculations first, and I think then send it back. Our request for relief is actually a full remand based on the guidelines claims that we made, that the Court erred in its legal determination about not giving the third point despite the prosecutor's failure to make that motion. We also believe that the Court should remand it so that the Court can know the correct law for cultural assimilation and not and redo that process without having a legal misunderstanding of this Court's case law. So we're asking for the limited remand, but first we ask the Court to resolve the guidelines questions and actually give a full remand on those errors so the Court can determine a correct guideline sentence to begin the process of deciding what a reasonable sentence is. You want resentencing, in essence, on a blank slate. That's correct, Your Honor. And the first basis is that the Court didn't recognize that it had power under Wade to go ahead and grant the third point regardless of that. I think it's fairly clear in this record that the government, right before the plea occurred, said we haven't started the trial process. And I know that I wasn't able to cite the case, but the case of Kempel, which I had just come across yesterday at 27F3rd 1409, the Court there says it has to be meaningful trial preparation, and it can't be. Let me ask you this, counsel. Where in the record are you drawing your inference that the Court was not aware that it had the right to give the third point despite the government's refusal to make the motion? This is on ER, page 26 of the sentencing transcript. And I quote the Court, quote, "...the issue of getting three points for acceptance has been taken care of because the government is not going to make a motion to give you the extra one point." So you're only going to get two. It didn't say that I don't have the power to go beyond that, but I think that's pretty much in essence what it's saying. It says they didn't make the motion, I can't do anything about it. It decided that he fully accepted responsibility. Actually, the pre-sentence report had recommended a three-point reduction. But the prosecutor came in before sentencing and said, no, you can't have that because we're not making the motion. And the ---- And why did it not make the motion? Because they had to find out, they had to go do some research into the mother's A file to find out that the story your client was telling was false. But, Your Honor, that ---- I think that was a very short amount of time. If you take a look ---- It had to be done twice, once in May and then again ---- pardon me, once in February and then again in May. Well, I don't think it did this a second time, Your Honor. It was just repeating what had happened. Because defense counsel was insisting on the phony story for the defendant. And they had to say, look, we've told you that based on the A file, she didn't live here for a year before he was born. So he's not a natural ---- he's not a natural-born citizen of the United States. They had to tell him twice. Well, Your Honor, that's right. They did bring that up twice, but that's not trial preparation. The only preparation, the only thing that occurred was an agent reviewing ---- It isn't that trial preparation. Anything you do to prepare to counter a defense position is preparation for trial. Because at that point, as a prosecutor, you don't know if you're going to trial or not. I mean, the concept of a guilty plea is not having to do any preparation at all. If somebody pleads guilty, you're done with the case. But if you're back and forth in terms of what the possible defenses are, that can legitimately be considered trial preparation. What's your case authority for the proposition that work that's done to refute a possible defense is not trial preparation? Well, I refer, again, I'm sorry, to the Kimple case, which hasn't been cited in the briefs, but I'll give the authority to the clerk at the afterwards. But in that case, they say it has to be meaningful trial preparation. In that case, there were motions to suppress that went on for a year. And the Court, I think, recognizes that in all kinds of pretrial motions, the government's becoming familiar with the case. I mean, that's a preparation for trial. But pretrial motions, in this case, disposition talks. Is this case going to go to trial or not? That's what it was about. The prosecutor could have said in the beginning, I don't want to hear that. You either take my plea bargain or we're going to go to trial. The prosecutor didn't do that. The prosecutor should have gave notice on April 21st, just a couple weeks before he pled guilty, said we still haven't started the trial process. This, I think, is a post hoc rationalization. When you take a look at what the district court or what the prosecutor told the sentencing court, it said the real reason is because we think he obstructed justice. This is an untested allegation. What they should have done is go to the district court and say, you know what, we don't think Torres-Coast is fully accepted responsibility. We think he should get an obstruction of justice. Thank you, Judge. May it please the Court. My name is Bruce Ferg, assistant United States attorney on behalf of the government. Since you've obviously been interested in the acceptance issue, I'll go to that directly. This clearly was a case where there was substantial trial preparation that was conducted by the government. I would direct the Court's attention not to ER 17, where the government's attorney simply says that the exhibits and witnesses for trial had not been put together, which obviously there's a formal process that you have to prepare for a foundation and so forth, as opposed to or compared to ER 15, in which is another letter from the prosecutor, which is pointing out to the defendant's counsel, hey, we are repeatedly reviewing this file. You are raising this defense, which is a defense that had to go to the jury if it was presented. It's not just like a suppression motion that the judge could decide, of derivative citizenship. And because of that, we've not only had to look at the papers that you presented to us, but we've gone back and we've pulled this A file, compared it, looked at the dates, found out where the mom was swearing that she actually was a resident of Mexico and so forth. So, yes, there was, in fact, significant trial-oriented preparation that was going on, and it was not until, in fact, this spurious defense had been exploded that the defendant chose to plead guilty. And that's why it was untimely, which clearly is a legitimate reason for the government to withhold moving for that acceptance. And I would just point out to the Court that the reason why this is not unconstitutional and not a problem of separation of powers is because, initially, the authority to sentence in a particular way is a conglomerate in which all three office office of, excuse me, all three branches have a part to play. And it's very clear from this Court's prior line of decisions dealing with granting the authority to the government whether or not to agree to departure for substantial assistance that the government has a legitimate part to play in deciding whether or not the conditions are right. And what the Feeney Amendment did was to recognize that there are certain things that need to be considered, such as the Court's calendar, which its own economies and its own allocation of resources need to be considered, but the government also has its own allocation of resources problems, and this case is a beautiful example of it. Guilty plea case goes off the district court's docket, end of story. Court's happy. And this has not had to expend anything. But how did we get to that point? The government had to go to the trouble of reviewing all these documents, having its agent check them all out in order to persuade, in effect, the defendant to take that guilty plea. So the government's interests are not always completely congruent with the defendant or, excuse me, with the courts. And so what the Feeney Amendment simply said is, okay, the court controls two points, can look at what its docket did, but the government also has a reasonable degree of input on that side. Kennedy. Counsel, do you agree with the case decided by your opposing counsel that if the failure to depart downward were motivated by bad faith or some arbitrary or capricious motivation, the court should apply the third point? Absolutely. If that were so, but this is not that case, Wade makes it very clear that it's any legitimate government reason. And certainly the delay, the spurious defense, these are all entirely appropriate reasons for the government saying, no, no, no. You may have accepted enough responsibility to warrant the first two points because you're getting yourself off the district court's docket, but we don't have to give you the benefit of the third point when you basically put us, the prosecuting agency, to all this trouble. What's your response to opposing counsel's argument that the government did not recognize that it had discretion to award the third point? I guess my response is that I agree that the district court did not see that it had that discretion because that was true. The Feeney Amendment, which is statutory, this is an express statutory inclusion into the guidelines, gave that authority to the government. But what about your concession before that if there were a reason to the government could, I mean, the court could still award that third point? How do those two? Only if it were in fact done for bad faith or for an unconstitutional purpose. In other words, then we're getting to the area of overall due process, which is what Wade was based on. In other words, we can do, we have the right under the statute to exercise our discretion, if you will, appropriately, but we cannot do it discriminatorily or inappropriately. And the facts here are that it was a very appropriate use of that discretion. If we had said we're not going to give you the third point because of your race or religion or something like that, that clearly would have been out of bounds and improper. But since we don't have a due process problem, which is different from the separation of powers issue, then it was clearly within the appropriate purview of the prosecutor to say, you have delayed us and caused us to expend these resources, and on top of that, it's a spurious defense where you're going to make your mother into a perjurer, we have a good reason to do what we can to deter that kind of activity. Go ahead. What is your strongest argument that we don't need to remand under Ameline, that this is one of those few cases where we have sufficient indication of what the trial court judge would do? I think it goes back to actually what you referred to earlier, Judge Fletcher, and that is the fact that Judge Nelson. I'm sorry. I'm honored to be asked to call Judge Fletcher, but I am not. The bottom line is that Judge Collins did have the opportunity to go lower, if he had wanted to, in the context of the cultural assimilation departure which was requested of him. In other words, he could have gone many points down, and he said, no, I'm only going to give you two, or it was a one. But anyway, it was less than had been requested. And so he, even within the context of the specific arguments that were made to him by the defendant, could have gone lower, but he said, no, this looks about right. This looks reasonable to me. And he was not unhappy with the number of months or the range that he settled on. He said, yes, this is heavy. But he didn't say, oh, I'm sorry that it's that heavy. Yeah, but the problem with that, counsel, is the district court judges were operating in a mandatory guideline system. So district court judges are always cognizant of where they are in the scheme, you know, despite having discretion. Still have an eye on that mandatory guideline sentencing range. And so with that, you know, with our recent case authority, which says that under a mandatory guideline system, that's non-constitutional error and should be remanded, how do you respond to that? Well, basically our position is based on the language in the Ameline and Bank decision, which indicated that at least initially you are doing a typical plain error analysis. And it's only if the record is unclear or it's impossible to tell whether the judge would have gone lower that it's necessary to remand. But post-Ameline, in United States v. Moreno-Hernandez, we said that in every case where mandatory guidelines were used to shape the sentencing, regardless. It should be. But the issue with Moreno-Hernandez, though, was would the remand procedure be applied both to constitutional violations under Booker and also to the guidelines issues? Non-constitutional, which we have here. We have a non-constitutional error because the sentence was imposed under a mandatory guideline scheme. That's Moreno-Hernandez. But Moreno-Hernandez did not attempt, as it could not as a panel opinion, to say this in Bank decision in Ameline 3, which says that we only do this if it's impossible for us to tell what the district court judge would have done or if he would have I think the language is given a materially different sentence had he known that the guidelines were advisory. Ameline 3 addressed only constitutional error, not non-constitutional error. So it was not controlled. Well, if Moreno-Hernandez says we apply the same basic analytical approach to both, then plain error applied in this way, it would seem to me, applies to both as well. Any other questions? The other issues that we had are the cultural assimilation, whether it was appropriate for the district court to base that on the defendant's extensive criminal history. And I would suggest to you that that approach was entirely appropriate under the language of Lipman itself. Everyone recognizes that Lipman is kind of the seminal case, and I direct the Court's attention particularly to page 731 of the opinion, where it repeatedly says that cultural assimilation tells us about character. And it specifically mentioned that the district court in that case had appropriately considered the prior criminal history in deciding whether to give that departure. But Lipman does not preclude giving a downward departure for cultural assimilation even if there's criminal history, does it? It does not say that it's off-bounds as a matter of law, and I don't think the district court did that here. He simply said, with four aggravated felonies, no. Thank you, Your Honor. All right. Thank you, counsel. One minute for rebuttal. Thank you, Your Honor. I'll start with cultural assimilation. If the Court takes a look at ER-32, the Court said, so I'm going to give you only one level off for your newly cultural assimilation. I think the government believes that the Government agrees that, in its brief, that the Court believed his cultural assimilation arose after he reentered. That's just clearly contrary to this Court's case law under Lipman, Rivas-Gonzalez. This man had 30 years-plus of ties that he had formed, so the Court makes it clear that it's not giving any consideration to what happened before he reentered, and that's the reason why the Court committed legal error in the extent of its downward departure and why the Court should remand for that reason. If the Court has any question about whether the Government did prepare or not for trial, I think in light of the Government's concession that Wade applies and that there appears to be nothing that the Court recognized that the district court didn't recognize that it had the authority, the Court should remand and give the district court a chance to decide that issue. Finally, something the Government ---- If we do a limited remand, then the district court can decide whether or not it would have imposed a different sentence, looking at all of these considerations, couldn't it? Well, it's unsure, Your Honor. I think that Ameline says you have a limited remand to decide whether you would have imposed a materially different sentence. What's important from this Court's case law subsequent to Ameline is that the guidelines issues are separate from that, because the Court has to start with a correct guidelines calculation. And it's not going to do that, I don't think. It can't do that on the Ameline limited remand is the way I read this Court's opinion. That's why I think a full remand is necessary to allow the Court, both with respect to cultural assimilation and the Wade issue and the separation of powers issue. The Court may have had the exact same ---- may have considered all of this. We don't know what the Court considered, because the record isn't clear. And so if there was a limited Ameline remand, the Court ---- that's why we said that in Ameline. The district court is in the best position to know what the sentence was based upon and whether or not the sentence would have been materially different if the guidelines had been advisory rather than mandatory. So I'm not sure that your point is well taken, because the record does not reflect one way or the other. If the Court gives the remand and suggests the Court to look at these issues, then the Court will look at the issues. I don't think we have to suggest. I think it's up to the district court to decide the extent to which the sentence would have differed, period. But I fear that in this Court's decisions, it's only going to decide whether under an advisory system it should change its sentence. It will not decide the legal calculations about the guidelines which are being challenged here. I understand. We understand your argument. Thank you. Thank you to both counsel. Thank you, Your Honor. The case just argued is submitted for decision by the Court. The next case on the calendar for argument is Stokes v. Shiro.
judges: Dw Nelson, Rawlinson, Bea